# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:14-00023 |
| | ) | |
| CHARLES SCARBOROUGH | ) | |

## MEMORANDUM

This matter is on appeal from a January 17, 2014 Judgment in a Criminal Case (Docket No. 2) in which Magistrate Judge Griffin found Defendant Charles Scarborough guilty of the misdemeanor offense of threatening and intimidating a forest officer in violation of 36 C.F.R. § 261.3(a). Having read the transcript of the trial, listened to the oral findings, and considered the arguments of counsel, the Court will affirm Magistrate Judge Griffin's decision.

## I. FACTUAL BACKGROUND

The incident giving rise to this case occurred at Land Between the Lakes ("LBL"). LBL is a National Recreation Area nestled between Tennessee and Kentucky, and is overseen by the United States Forest Service.

On October 24, 2011, Defendant, then age 77, accompanied by his nephew, Danny Scarborough, who is in his 50's, entered the Administration Building at LBL to speak with someone concerning issues relating to access to a cemetery in the park where some of Defendant's relatives are buried. At the time, Lisa Hawkins worked in another building just down the sidewalk from the Administration Building. Although not a sworn peace officer, Ms. Hawkins worked as a program assistant for law enforcement at the park, answering the phone, greeting visitors, and assisting the patrol captain.

1

After the Scarboroughs arrived, someone from the Administration Building called Ms. Hawkins, asking if a law enforcement officer was available. She instructed the caller there was not, and called her supervisor, Patrol Captain Duane Cameron. Captain Cameron told Ms. Hawkins to go and talk with the Scarboroughs until he could get there, which would be in about thirty minutes. Ms. Hawkins was also told that if she felt help was needed in the interim, she should contact the Trigg County Sheriff's Department.

Ms. Hawkins walked to the Administration Building and encountered the Scarboroughs near the reception desk. The Scarboroughs told Ms. Hawkins that they wanted to speak with either Jamie Bennet, the forest archaeologist, or William Liswosky, the Area Supervisor (who has since retired), about cemetery access. Ms. Hawkins instructed the duo that an appointment would be necessary to speak to either. After approximately ten minutes of discussion, Ms. Hawkins asked the Scarboroughs to lower their voices, and they complied. Nevertheless, because they were in proximity to guests at the park, and because the Scarboroughs were loud and upset during most of the interaction, Ms. Hawkins asked that they go outside.

Once outside, the conversation continued, during which Defendant made mention of the fact that he wanted to see a deed and have his day in court because his family's 252½ acres of land had been taken by the government in the creation of LBL. Defendant was upset, and he stated that he could build whatever he wanted to at Stone Cemetery and that, if Mr. Liswosky tried to stop him, "he would meet him with a double barreled shotgun." (Docket No. 21, Tr. Trans. at 15). Upon hearing that, Ms. Hawkins said that she hoped he didn't mean that to which Mr. Scarborough said, "well if he tries to stop me, I know how to use it." (Id.). At the time, Defendant was grinning. After those comments, Danny Scarborough approached Ms. Hawkins with his hands crossed and said,

2

with a grin on his face, "I've admitted to breaking the law so why don't you arrest me?" (Id.).

Defendant's comments about the double barrel shotgun and knowing how to use it serve as the basis for the charge in this case. Ms. Hawkins testified that she felt intimidated by the comments because Defendant "used the terminology of a double barreled shotgun, and the way he said it, with a smile on his face, in my personal space." (Id. at 23). She also testified she was concerned the Scarboroughs might have a weapon on them as they were both wearing loose clothing (with Defendant dressed in overalls), and, at least initially, both had their hands in their pockets. Ms. Hawkins further testified she was grateful that Jackie Franklin, a soil scientist with the Forest Service, had followed her outside because he could call for help if necessary.

Mr. Franklin testified that on October 24, 2011, while walking down the hall in the Administration Building, he heard loud voices in the reception area. Upon rounding the corner, he saw Ms. Hawkins and two males exit the building. Since the conversation appeared to be heated, the men appeared to be agitated, and there were no law enforcement personnel on site, Mr. Franklin decided to follow the three outside. While Ms. Hawkins continued to speak with the Scarboroughs, Mr. Franklin stood approximately 25 to 30 feet away. He could not hear the conversation, but he testified that the Scarboroughs were very animated, they used a lot of hand gestures, and they would get into Ms. Hawkins personal space and then back away. He also testified that the "larger gentleman [Danny Scarborough] was using a lot more hand gestures," while the "smaller gentleman [Defendant] was using a louder voice," although they both invaded Ms. Hawkins personal space "at different times." (Id. at 63.).

Within five to ten minutes of exiting the building, the conversation came to an end. Ms. Hawkins testified that the ending was cordial, with the Scarboroughs thanking her for her time. (Id.

at 43-44). She then returned to her office, as did Mr. Franklin. Ms Hawkins wrote a report of the incident and signed it the following day.

Mr. Liswosky was not at LBL when Ms. Hawkins had her discussion with the Scarboroughs. However, he was briefed about the incident within 24 to 48 hours by Captain Cameron, who serves as the lead law enforcement at LBL.

Although he had never met them, the Scarboroughs were known to Mr. Liswosky. He first heard about them shortly after his arrival at LBL in June 2000. The majority of the contact related to a land issue surrounding the cemetery. Mr. Liswosky received three to five letters a year from Defendant or his nephew, and members of the Forest Service met with Defendant on numerous occasions during the time that Mr. Liswosky was Area Supervisor.

Mr. Liswosky testified that as the years progressed, Defendant's letter "began to take a more harassing tone." (Id. at 78). During the year or two before the incident, Mr. Liswosky says he received letters that expressed promises to break the law and dared Mr. Likowsky to "come and deal" with Defendant. (Id. at 91). He also testified that several Forest Service employees told him they were upset by Defendant's letters and/or their interactions with him at LBL. Given the background and what Mr. Liswosky perceived to be yet another threat, he told Captain Cameron that "this felt serious and [was] a continuing serious matter" that needed to be managed. (Id. at 83). Mr. Liswosky testified that the threat involving a shotgun caused him concern, not only for his own personal welfare, but also for the welfare of the 300 people who work at LBL.

Based upon Ms. Hawkins statement, Karen Pickens, a Forest Service Officer issued a Violation Notice on October 25, 2011, alleging that Defendant threatened, resisted, intimidated or interfered with a forest officer in violation of 36 C.F.R. 261.3(a). As indicated, Magistrate Judge

4

Griffin found Defendant guilty of the offense, and sentenced him to six months probation.

## II. **LEGAL DISCUSSION**

Under 36 C.F.R. § 261.3, "[t]hreatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest System is prohibited." 36 C.F.R. § 261.3(a). "For purposes of 36 C.F.R. § 261.3(a), a forest officer is performing an 'official duty' when the officer is on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest." United States v. Willfong, 274 F.3d 1297, 1300 (9th Cir. 2001). A "[f]orest officer means an employee of the Forest Service," id. § 261.2, and not just sworn peace officers.

Generally, "violation of the regulations under 36 C.F.R. § 261 are treated as strict liability offenses, which therefore do not require proof of a mental state." United States v. Murphy-Ellis, 47 F. App'x 488, 489-90 (9th Cir. 2002) (collecting cases). Thus, to secure a conviction under 36 C.F.R. 261.3(a), the Government must prove beyond a reasonable doubt that (1) Defendant threatened, resisted, intimidated, or interfered with; (2) a Forest Service officer; (3) engaged in the performance of his or her official duties in the protection or administration of National Forest Land. See United States v. Parker, 2012 WL 3027941, at *3 (E.D. Wash. July 19, 2012).

Here, Defendant does not dispute that both Ms. Hawkins and Mr. Liswosky were Forest Service officers or that they were engaged in official duties for purposes of the regulation. Rather, his sole challenge is to whether the Government proved that he intimidated, threatened, or interfered with Ms. Hawkins or Mr. Liswosky within the meaning of the regulation.

Defendant argues that "[f]rom start to finish, the government's prosecution of Mr.

Scarborough for his encounter with Lisa Hawkins at Land Between the Lakes on October 24, 2011 has been marked by overaction borne of misinterpretation, first of Mr. Scarborough's remarks and now of his opening brief in this appeal." (Docket No. 16 at 1). Typical of this, Defendant contends, is the Government's assertion that Defendant erroneously argues he was acquitted of the resisting or interfering with a forest officer charges when in, fact, both the regulation and the charges contain those proscriptions, and Magistrate Judge Griffin found Defendant guilty as charged. Defendant claims this is a mischaracterization of the record because the Magistrate Judge found that Defendant did not interfere with Ms. Hawkins's performance of her duties.

Although Magistrate Judge Griffin did, in fact, find that Defendant did not interfere with Ms. Hawkins's job duties, this dispute is really a non-issue. Under the regulation, "'threatening, resisting intimidating, or intentionally interfering' are stated disjunctively so that proof of any one of the acts alone constitutes an offense." United States v. Bucher, 375 F.3d 929, 933 (9th Cir. 2004). The central question here, then, is whether there was sufficient evidence to find Defendant guilty of either intimidating or threatening a forest officer.

In arguing that there was not, Defendant concedes that the Government "is correct that courts have treated 36 C.F.R. § 261 as setting forth strict liability offenses for which the government need not prove any *mens rea*," but "this does not mean that a witness' testimony of feeling 'fearful' or intimidated must be taken at face value as proof beyond a reasonable doubt." (Docket No. 16 at 4). He continues by setting forth the very essence of his argument on appeal:

> When the context of Ms. Hawkins' testimony is carefully considered, it becomes apparent that her fear or sense of intimidation–if real at all– derived not from Charles Scarborough's statements or conduct, but rather from co-workers' tales about the two Scarborough men. From the context of those tales, Ms. Hawkins viewed Mr. Scarborough's smile as something intimidating when she could have so easily viewed it at face value, that is, as evidence of facetiousness. From the context of

6

those tales, she viewed baggy overalls as a means to disguise a weapon when she could have taken them at face value, that is, as evidence that an elderly man who lives in Tennessee Ridge likes to wear overalls. From the context of those tales, she took Mr. Scarborough's comment about owning a double-barrel shotgun as an actual threat, when she could have taken his remark about resolving his property dispute in court at face value. That is to say, discussing a desire for court intervention is simply inconsistent with an actual threat to do harm to a third party.

Finally, viewing Ms. Hawkins' testimony in the context of her actions that day, from voluntarily walking outside with Charles and Danny Scarborough, despite their already loud voices inside the building, to remaining engaged in the conversation without backing away even after Mr. Scarborough made the remark at issue, to not even bothering to give her first-hand account to a long-time co-worker, Bill Liswosky, it is clear that her testimony should not be taken at face value as proof beyond a reasonable doubt that Mr. Scarborough intimidated her or threatened any forest officer. Nor should the testimony of Jackie Franklin, who could not even recognize the defendant and was too far away to discern what either Charles Scarborough or Danny Scarborough said, be taken at face value. Mr. Franklin, a soil scientist at LBL, only wrote a report about his observations in 2013, when Karen Pickens, the signatory on the violation notice, asked him to do so. Notably, the violation notice prepared by Ms. Pickens attributes to Charles Scarborough actions allegedly causing Ms. Hawkins to fear for her safety whereas Ms. Hawkins' own report, written on the day of the incident, attribute actions causing her to "feel intimidated" and "fearful for [her] safety" to Danny Scarborough instead. Yet in Ms. Hawkins' trial testimony, presented more than two years after the incident but on the same day she met in a conference room to prepare her testimony with each of the other witnesses for the government, Ms. Hawkins insisted that she also felt intimidated by Charles Scarborough. Similarly, while Ms. Hawkins testified to feeling fearful and intimidated by Mr. Scarborough's statements, that testimony should not be taken at face value where she also acknowledged the encounter ended cordially, and she invited both Charles and Danny Scarborough to make an appointment to meet with Bill Liswosky on another day.

(Id. at 4-5).

Admittedly, Defendant makes a strong argument, one that would have more purchase were this Court the actual factfinder. However, Rule 58 of the Federal Rules of Criminal Procedure provides that for petty offenses and misdemeanors, of which 36 C.F.R. § 261 is one, "[e]ither party may appeal an order of the magistrate judge to a district judge," Fed. R. Crim. P. 58(g)(2)(A), but [t]he defendant is not entitled to a trial *de novo* by a district judge," id. 58(g)(2)(D). Rather, "[t]he

scope of the appeal is the same as an appeal to the court of appeals from a judgment entered by a district judge." Id. Thus, "the district court properly review[s] the magistrate judge's legal determinations *de novo* and her factual findings for clear error." United States v. Evans, 581 F.3d 333, 338 n.4 (6th Cir. 2009).

Upon review, the Court cannot say that Magistrate Judge Griffin committed legal error or was clearly erroneous in her finding that Defendant was guilty of intimidating Ms. Hawkins and threatening Mr. Liswosky as she clearly credited their testimony. Essentially, Defendant's challenge is to sufficiency of the evidence. "In reviewing a conviction following a bench trial for sufficiency of the evidence," a court must decide "'whether the evidence is sufficient to justify the trial judge, as trier of facts, in concluding beyond a reasonable doubt that the defendant was guilty.'" United States v. Crozier, 259 F.3d 503, 516 (6th Cir. 2001) (quoting United States v. Bashaw, 982 F.2d 168, 171 (6th Cir. 1992)).

In making that determination, a court "must resolve all conflicts in the testimony in the government's favor and draw every reasonable inference from the evidence in favor of the government." Bashaw, 982 F.2d at 171. Moreover, "a reviewing court does not reweigh the evidence, redetermine witness credibility, or substitute its judgment for the factfinder's." United States v. Taylor, 489 F. App'x 34, 45 (6th Cir. 2012); see also United States v. Sperl, 458 F. App'x 535, 545 (6th Cir. 2012) (citation omitted) (because witness's "testimony was not 'so internally inconsistent or implausible on its face' as to negate it being credited by a reasonable factfinder, we must give considerable deference to the district court's credibility determination").

When the testimony and the reasonable inferences to be drawn therefrom are construed in the Government's favor, there was more than sufficient evidence to find that Defendant threatened

Mr. Liswosky and intimidated Ms. Hawkins. In so ruling, the Court has considered but is unpersuaded by Defendant's arguments and the cases upon which he relies.

With regard to the threat prohibition, Defendant asserts that, for three reasons, he did not utter a "true threat," as required by cases such as Watt v. United States, 394 U.S. 705 (1969), and Virginia v. Black, 538 U.S. 343 (2003). First, he argues his statement about having a shotgun and knowing how to use was in relation to any efforts made to stop him from building a house at Stone Cemetery, and "[j]ust as Mr. Watts would have no reason to believe he would ever get President Johnson 'in his sights,' Mr. Scarborough would have no reason to believe he would ever encounter Mr. Liswosky at Stone Cemetery trying to stop him from building a house." (Docket No. 7 at 13). As Defendant is apt to note, however, context matters.

Watts, a Vietnam-era case, arose after defendant attended a rally regarding police brutality. After one of the participants suggested that the young people in attendance should get more education before expressing their views, defendant said:

> They always holler at us to get an education. And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J. They are not going to make me kill my black brothers.

Watts, 394 U.S. at 706. "Emphasizing the context of the statement, the expressly conditional nature of the statement, and the reaction of the listeners, who had laughed in response, the [Supreme] Court concluded that the comment was "a kind of very crude offensive method of stating a political opposition to the President." United States v. Castillo, 2014 WL 1716996, at *2 (11th Cir. May 2, 2014) (citing Watts, 394 U.S. at 708). Watts made what the Second Circuit characterized as "an obviously flippant statement[.]" United States v. Turner, 720 F.3d 411, 421 (2nd Cir. 2011); see also United States v. McDonald, 444 F. App'x 710 (4th Cir. 2011) (characterizing Watts's statement as

9

one "made in jest in the context of a public political debate").

Here, no one laughed at Defendant's comments; to the contrary, Ms. Hawkins gave him a chance to back away from the comment, but Defendant did not. See id., at *3 (finding post on Facebook a true threat in part because "[u]nlike in Watts, there was no evidence that anyone had laughed in response to [defendant's] post, and, instead, people interpreted it as a legitimate threat"). Further, and as Magistrate Judge Griffin pointed out, comments about the use of firearms are not taken lightly in this day and age.

True, and just as in Watts, the threat was conditional, but even conditional threats can be "true threats." See United States v. Elonis, 730 F.3d 321, 332 (3rd Cir. 2013) (even in light of Watts, "there is no rule that a conditional statement cannot be a true threat—the words and context can demonstrate whether the statement was a serious expression of intent to harm"); United States v. Vaksman, 427 F. App'x 447, 448 (9th Cir. 2012) (holding that conditional statement can be true threat if "a reasonable person would interpret [it] as a serious expression of intent to harm"); United States v. Wolff, 370 F. App'x 888, 894 (10th Cir. 2010) (true threat could exist notwithstanding "the arguably conditional nature of some of Defendant's statement"); United States v. Hoffman, 806 F.2d 703, 711 (7th Cir. 1986) (when a communication is clear and threatening, "the conditional nature of [the] statement does not make the statement any less of a 'true threat' simply because a contingency may be involved"). In fact, "[a] threat doesn't need to be communicated directly to its victim or specify when it will be carried out." United States v. Parr, 545 F.3d 491, 497 (7th Cir. 2008) (citing Porter v. Ascension Parish Sch. Bd., 393 F.3d 608, 616–17 (5th Cir. 2004)).

Second, Defendant argues that "under Black, a true threat includes a component of communicating an intent to commit *unlawful* violence." (Docket No. 7 at 13) (emphasis in original).

10

He claims his statement was not an intent to commit unlawful violence because the Tennessee code provides:

> (a) A person in lawful possession of real or personal property is justified in threatening or using force against another, when and to the degree it is reasonably believed the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property.

Tenn. Code Ann. § 38-11-614(a). That statutory provision is of no aid to Defendant because, at the time the threat was made, he was not in lawful possession of property at Stone Cemetery, and, moreover, there is no evidence whatsoever that force was immediately necessary to prevent trespass or interference, let alone threat of what could be deadly force. See Poliak v. Adcock, 2002 WL 31109737, at *5 (Tenn. Ct, App. Sept. 24, 2002) (stating in regard to Tenn. Code Ann. § 39-11-614(a) that "[p]roperty owners can never use force that endangers human life or inflicts serious bodily harm."); State v. Buell, 1997 WL 677947, at *3 (Tenn. Ct. App. Nov. 3, 1997) (stating that while Tennessee Code recognizes the defense of protection of property, the "clear legislative intent [was] that deadly force is not permitted").

Third, Defendant argues that "the reactions of Ms. Hawkins and Mr. Liswosky to the statement belie any claim of true fear of Mr. Scarborough." (Docket No. 7 at 14). However, Magistrate Judge Griffin credited Mr. Liswosky's testimony – specifically his testimony about threats to federal officials who are just trying to do their job – and she did not err in doing so.

Withal, whether or not Defendant made what can properly be characterized as a true threat, he was also found guilty of intimidation. In arguing that the evidence was insufficient to support that charge, Defendant relies primarily upon United States v. Good, 257 F. Supp. 2d 1306 (D. Col. 2003). That case is readily distinguishable, both procedurally and substantively.

Procedurally, the opinion in Good constituted the findings and conclusions of the Magistrate

11

Judge who heard the case. Here, of course, the Court has a limited role, that of reviewing a Magistrate Judge's findings to determine whether they are clearly erroneous.

Substantively, the Magistrate Judge in <u>Good</u> acquitted the Defendant of threatening or intimidating a forest service officer, notwithstanding the fact that Megen Kabele, the complaining witness, and a law enforcement officer, Ronald Zaccaginni, both testified that defendant was vocal, very loud, antagonistic, argumentative, and paced back and forth, and that the situation was tense. However, the Magistrate Judge "found Ms. Kabele's testimony to be untrustworthy," that, in a response to a request from defense counsel, she altered a document in the case, and that her actions "evidence[d] her willingness to act improperly [and] deceive[.]" <u>Id</u>. at 1316-17.

There was no evidence in this case that Ms. Hawkins exhibited a willingness to act improperly or deceive. To the contrary, Magistrate Judge Griffin found that Ms. Hawkins clearly felt intimidated, was glad that Mr. Franklin was there to "watch her back," and that she handled the matter "admirably" by diffusing a tense situation.

Like Magistrate Judge Griffin, this Court is of the view that Mr. Scarborough truly believes that he has been wronged by the Government in relation to the taking of his family's land at LBL. However, that is not the issue before the Court. Rather, the sole issue is whether there was sufficient evidence to convict Defendant of threatening and/or intimidating a forest officer. There was.

### III. CONCLUSION

Based upon the foregoing, Defendant's conviction for the misdemeanor offense of threatening or intimidating a forest officer in violation of 36 C.F.R. § 261.3(a) will be affirmed.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE